RENDERED: APRIL 23, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0734-MR

LONNIE MARCUM                                                   APPELLANT

APPEAL FROM LAWRENCE CIRCUIT COURT
v.        HONORABLE JOHN DAVID PRESTON, JUDGE
ACTION NO. 18-CR-00051

COMMONWEALTH OF KENTUCKY                                        APPELLEE

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: ACREE, CALDWELL AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE: Lonnie Marcum appeals from the revocation of his

probation on the basis that the Lawrence Circuit Court failed to make a finding that

he could not be appropriately managed in the community.

Pursuant to a plea agreement, on June 12, 2018, Marcum pled guilty

to one count of receiving stolen property under $10,000 and an amended count of

persistent felony offender in the second degree (PFO 2). The plea agreement called for Marcum to have a total sentence of five years which would be probated for five years, with 180 days in jail and "then drug treatment." The judgment and sentence were consistent with the plea agreement except the requirement of drug treatment was changed to "[a]fter release from jail evaluation for substance abuse issues by Probation and Parole."

Under the conditions of his probation, Marcum was prohibited from committing any violation of the law, class B misdemeanor or higher, and required to follow all recommendations, requirements, and conditions of Probation and Parole "including but not limited to referral to a drug or substance abuse program." Graduated sanctions were not made a condition of his probation. Marcum was ordered to report to Probation and Parole after his release.

Marcum was released from custody on September 7, 2018. Marcum never reported to Probation and Parole after his release.

On October 19, 2018, Marcum was arrested for DUI and driving on a DUI suspended license, second offense. He failed to report for his court date on December 11, 2018, and a bench warrant was issued for his arrest.

On January 8, 2019, the Commonwealth filed a motion to revoke Marcum's probation, attaching a violation of supervision report which detailed the

attempts that had been made by Probation and Parole Officer Billy Sloan to contact Marcum and Marcum's violations of failing to report and committing DUI.

Ultimately, Marcum was taken into custody on his pending charges and pled guilty to DUI, second offense, in exchange for a ninety-day sentence and a fine. On March 5, 2019, Marcum's DUI judgment and sentence was imposed. On March 15, 2019, Marcum began an inpatient drug and alcohol rehabilitation program through Addiction Recovery Care.

At the probation revocation hearing held on April 26, 2019, the only testimony was provided by Officer Sloan. Officer Sloan testified that Marcum failed to report despite being instructed to do so at the time probation was imposed and when instructed to do so by another Probation and Parole officer who saw Marcum when he was in court on another matter.

Officer Sloan testified he attempted to contact Marcum after he failed to report, calling every number he had for him and leaving a message with his step-father. Officer Sloan testified that when he conducted a home visit, Marcum's mother reported that she had not seen Marcum in months.

Officer Sloan also testified about Marcum's arrest and plea in his DUI case. He opined that Marcum's repeated failure to report and committing a DUI constituted violations of the terms of his probation.

Marcum submitted a letter dated April 25, 2019, from his case manager at Addiction Recovery Care, which was admitted into evidence. The letter stated that Marcum had completed phase one of treatment on April 11, 2019, and was in phase two. It explained that in his current phase Marcum participates in twelve hours of peer support and nine hours of clinical group weekly, has bi-weekly individual clinical sessions and three to four hours of Master's Studies groups. His case manager stated that Marcum planned to continue onto treatment phase three.

Marcum admitted to violating his probation but noted he had entered inpatient treatment on his own initiative and was compliant and participating. He requested graduated sanctions in lieu of revocation. He proposed extending the length of his probation and allowing him to continue with his treatment program.

The Commonwealth argued that based upon Marcum's DUI conviction, it had no choice but to seek revocation. However, noting Marcum was in treatment, it neither recommended revocation nor continuance on probation, instead stating it would leave the matter to the court's discretion.

The circuit court announced its decision from the bench:

Alright. The problem I have is the defendant's charge is one that is not only a danger to himself, but a danger to the community as a whole. Based upon that fact, I find that he has violated the terms and conditions of his probation, that there can be no substitute other than incarceration, so I am going to revoke his probation.

In a two-paragraph form order entered on April 29, 2019, the circuit court generally found that Marcum's violations, which were not enumerated, "constitute a significant risk to prior victims and/or the community at large and defendant cannot be appropriately managed in the community." It then ordered Marcum's probation revoked.

Marcum acknowledges that the circuit court could make oral findings of fact but argues that even if the court's oral findings are sufficient to establish that he posed a significant risk to the community, the circuit court erred in not also making a finding that he could not appropriately be managed in the community before revoking his probation. The Commonwealth argues that the evidence was sufficient for revocation as Marcum could not be managed in the community where he never reported and absconded.

In 2011, the Kentucky General Assembly enacted the Public Safety and Offender Accountability Act, 2011 Ky. Laws Ch. 2, known as House Bill 463 (HB 463). HB 463 created several new statutes, including KRS[1] 439.3106, and heavily reformed others. *Commonwealth v. Andrews*, 448 S.W.3d 773, 776 (Ky. 2014). The General Assembly's intention in making these reforms was to "maintain public safety and hold offenders accountable while reducing recidivism

---

[1] Kentucky Revised Statutes.

and criminal behavior and improving outcomes for those offenders who are sentenced[.]" KRS 532.007(1).

The General Assembly's new focus was on "rehabilitation rather than incarceration[.]" *Helms v. Commonwealth*, 475 S.W.3d 637, 641 (Ky.App. 2015). An example of this can be seen in KRS 218A.005(2) in which it declared:

> Successful, community-based treatment can be used as an effective tool in the effort to reduce criminal risk factors. Therapeutic intervention and ongoing individualized treatment plans prepared through the use of meaningful and validated, research-based assessment tools and professional evaluations offer a potential alternative to incarceration in appropriate circumstances and shall be used accordingly.

Consistent with this declaration, the General Assembly revised KRS 218A.275(1), which previously gave courts the ability to provide treatment for a defendant's first conviction for a second or third-degree possession of a controlled substance, to also include treatment for first-degree possession of a controlled substance pursuant to KRS 218A.1415 and to allow treatment for subsequent possession offenses.

The General Assembly's focus on rehabilitation and treatment extends to probation through the enactment of KRS 439.3106, which retains the same language since it was created by HB 463.[2] KRS 439.3106 provides as follows:

---

[2] We quote the version in effect when Marcum's probation was revoked. The numbering was changed in 2019 when additional paragraphs were added which are not applicable here.

Supervised individuals shall be subject to:

(1) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large, and cannot be appropriately managed in the community; or

(2) Sanctions other than revocation and incarceration as appropriate to the severity of the violation behavior, the risk of future criminal behavior by the offender, and the need for, and availability of, interventions which may assist the offender to remain compliant and crime-free in the community.

The reasons why a defendant is placed on probation in the first place, that the defendant "is in need of the supervision, guidance, assistance, or direction that the probation service can provide[,]" may also form an appropriate basis for retaining a defendant on probation with modified or enlarged conditions. KRS 533.020(1). "[W]hen a probationer appears before the trial court because he has failed to comply with the terms of probation . . . KRS 439.3106 must be considered before probation may be revoked." *Andrews*, 448 S.W.3d at 778-79. "After HB 463, a trial court is not permitted to follow an unbending predetermined outcome [that probation must be revoked for a violation] but must consider the danger to the defendant's victim or the community and the possibilities of rehabilitation in the community." *Helms*, 475 S.W.3d at 644.

On appeal after revocation of probation, we "determine whether the trial court properly considered KRS 439.3106(1) before revoking the defendant's probation." *Commonwealth v. Gilmore*, 587 S.W.3d 627, 629 (Ky. 2019). "If the trial court considered the statute, we then review whether its decision to revoke probation was an abuse of discretion." *Id.* "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

In terms of the findings required under KRS 439.3106(1), we must determine "[w]hether the evidence of record supported the requisite findings that [the probationer] was a significant risk to, and unmanageable within, his community; and whether the trial court, in fact, made those requisite findings." *McClure v. Commonwealth*, 457 S.W.3d 728, 732 (Ky.App. 2015). Both findings under KRS 439.3106(1) are necessary before probation may be voided. *Burnett v. Commonwealth*, 538 S.W.3d 322, 324-25 (Ky.App. 2017).

> If the penal reforms brought about by HB 463 are to mean anything, perfunctorily reciting the statutory language in KRS 439.3106 is not enough. There must be proof in the record established by a preponderance of the evidence that a defendant violated the terms of his release and the statutory criteria for revocation has been met.

*Helms*, 475 S.W.3d at 645.

Specific findings of fact addressing the statutory criteria may be either written or oral. *Commonwealth v. Alleman*, 306 S.W.3d 484, 487-88 (Ky. 2010). Appellate courts should "look to both the written and oral findings in conjunction with one another and not separately in a vacuum." *Gilmore*, 587 S.W.3d at 630. However, a lack of oral findings combined with "conclusory [written] statements on . . . preprinted forms, related to the criteria in KRS 439.3106(1) . . . [are] not sufficient to meet the mandatory statutory findings necessary to revoke a defendant's probation." *Walker v. Commonwealth*, 588 S.W.3d 453, 459 (Ky.App. 2019).

The recent case of *Gilmore* provides an example of a sufficient combination of oral and written findings:

> The trial court made several specific findings from the bench regarding Gilmore's probation violations which were supported by the evidence: (1) that she tested positive for methamphetamine, (2) that she absconded from probation, (3) that she admitted to committing other crimes while absconding, (4) that she refused alternative treatment plans offered by her probation officer, (5) that she provided false information to her probation officer, (6) that she failed to cooperate with her probation officer, and (7) that she had picked up additional charges in the interim.

*Gilmore*, 587 S.W.3d at 630. The circuit court then announced that it would "enter the order revoking, make factual findings consistent with the need for incarceration, and that I cannot adequately supervise her within the community."

*Id.* The Kentucky Supreme Court explained that "[w]hile not specifically reiterating the exact language of KRS 439.3106(1), the trial court's oral findings explain the reasons Gilmore's probation was revoked and emphasize that a 'need for incarceration' exists and that the trial court 'cannot adequately supervise her within the community.'" *Gilmore*, 587 S.W.3d at 630-31.

The written order set out specific findings of numerous violations and determined there was probable cause for revocation. *Id.* at 629. It then tracked the requisite statutory language by stating "[t]he Commonwealth has convincingly established that the Defendant's failure to abide by conditions of supervision constitute a significant risk to prior victims or the community and cannot be successfully managed in the community." *Id.* at 631 (footnote omitted).

The defendant argued "both the written and oral findings fail to meet the statutory criteria because any reference to the statute was 'conclusory' and 'without reference to any factual basis for support.'" *Id*. The Court rejected that argument, explaining:

> In conjunction with its remarks during the revocation hearing, the trial court's written order shows that the court considered all the evidence and the specific requirements of KRS 439.3106(1) before deciding to revoke Gilmore's probation. This decision was supported by the evidence of record and thus, no abuse of discretion occurred.

*Id.*

The oral and written findings regarding revocation of Marcum's probation, in contrast, fail to form a cohesive whole showing that the circuit court considered and ruled upon both parts of KRS 439.3106(1). Certainly, the circuit court's oral statement that "defendant's charge [of DUI] is one that is not only a danger to himself, but a danger to the community as a whole" and was a violation of the terms of his probation was adequately supported by the record and in conjunction with its written findings was adequate to establish that the circuit court found that Marcum was a significant risk to the community. The same cannot be said regarding whether Marcum could be managed in the community.

The circuit court made no statement in its oral findings regarding whether Marcum could be managed in the community. While the circuit court's oral statement that "there can be no substitute other than incarceration," may appear similar to the pronouncement in *Gilmore*, the circuit court failed to make findings that connected a need for incarceration to an inability to manage Marcum in the community. In *Gilmore*, there were specific findings that the probationer absconded, refused alternative treatment, and continued to use drugs and accrue additional charges. With only a finding which related to Marcum's DUI, it is unclear whether Marcum's failure to report figured into the circuit court's calculus or whether the circuit court only wished to punish him with a "zero-tolerance" approach based on the seriousness of his DUI violation.

The lack of oral findings regarding whether Marcum is manageable in the community cannot be saved by considering the circuit court's written findings as they merely contain a recitation of the statutory language in KRS 439.3106(1) without findings specific to Marcum. These written findings are exactly the type of perfunctory recitation of the statutory language which our Courts have repeatedly confirmed are insufficient.

While we agree with the Commonwealth that evidence existed in the record to support a finding that Marcum could not be managed in the community, it is the circuit court's responsibility to make all findings, and we will not affirm based on what the circuit court could have done. In the absence of an explicit required finding to that effect, revocation was an abuse of discretion. *See McClure*, 457 S.W.3d at 733-34.

The reforms to our probation system will mean little if judges continue to immediately proceed to revocation, using the statutory language to justify the exact same actions they would have taken before the reforms made by HB 463 rather than carefully considering the individual circumstances of each probationer and what measures can be taken to help rehabilitate them. While we could conclude our analysis here, we wish to clarify some of the alternative options the circuit court had to revocation.

KRS 439.3106(2) provides that probation violations can be addressed through "[s]anctions . . . appropriate to the severity of the violation behavior[.]" This can include, when needed and available, "interventions which may assist the offender to remain compliant and crime-free in the community." KRS 439.3106(2).

A circuit court can modify probation to require that a defendant complete an alternative sentence if it is "in the best interest of the public and defendant[.]" KRS 533.010(6). Among the options available for such an alternative sentence, a circuit court can order a defendant to complete "a residential treatment program for the abuse of alcohol or controlled substances[,]" with specific mandatory conditions including that the defendant: "Undergo mandatory drug screening during term of probation; . . . [and] [u]ndergo aftercare as required by the treatment program[.]" KRS 533.010(6)(d); KRS 533.010(8)(d)1, 3. Circuit courts also have other alternative sentencing options, including requiring the defendant, for a period of up to twelve months, to reside in a halfway house, serve home incarceration, or serve jail time, with accompanying additional mandatory conditions. KRS 533.010(6)(a)-(c); KRS 533.010(8)(a)-(c).

Another option was to extend the length of Marcum's probation. Pursuant to KRS 533.020(4), the trial court could not unilaterally extend the length of time Marcum was on probation beyond the five years already specified because

the only exception to this, to permit payment of restitution, was not applicable to him. However, as explained in *Commonwealth v. Wright*, 415 S.W.3d 606, 611 n.3 (Ky. 2013), which relied on *Commonwealth v. Griffin*, 942 S.W.2d 289, 291-92 (Ky. 1997), "[i]t is worth noting that even without a finding of necessity, a probationer may knowingly and voluntarily agree to an extension of probation beyond five years, for example to avoid revocation of probation." Marcum proposed extending the length of his probation to avoid revocation, thus enabling the circuit court to choose this option as an alternative.

If drug addiction is at the root of Marcum's criminal behavior, requiring Marcum to complete an inpatient drug treatment program could have been an appropriate response in keeping with the rehabilitative purposes of HB 463. Although Marcum's violations are more serious than those of the defendant in *Helms*, Marcum also admits he has an addiction problem, and "[t]he record is devoid of any evidence that [Marcum] would not benefit from drug treatment or that he would not cooperate in such treatment." *Helms*, 475 S.W.3d at 645. In fact, there was evidence to the contrary. Beyond simply stating he would cooperate with treatment, Marcum was already receiving inpatient treatment, had completed phase one, had commenced phase two, and planned to continue onto phase three. However, the circuit court might also question whether Marcum was

-14-

sincere in his efforts, or whether he was only attempting treatment to avoid revocation. *See Andrews*, 448 S.W.3d at 780-81.

The decision to retain a defendant on probation does not mean that such a defendant's probation simply must continue as if no violations were committed. The circuit court had many options to address Marcum's violations without revoking his probation if it believed he could appropriately be managed in the community.

While we have clarified some of the options the circuit court has on remand, the ultimate decision as to whether Marcum's probation should be revoked or continued is not ours to make. "While HB 463 reflects a new emphasis in imposing and managing probation, it does not upend the trial court's discretion in matters of probation revocation, provided that discretion is exercised consistent with statutory criteria." *Andrews*, 448 S.W.3d at 780. "Nothing in [KRS 439.3106] or in the Supreme Court's interpretation of it *requires* the trial court to impose lesser sanctions prior to revoking probation." *McClure*, 457 S.W.3d at 732. *See also Aviles v. Commonwealth*, 17 S.W.3d 534, 536-37 (Ky.App. 2000) (explaining that trial courts retain the discretion under KRS 533.010 to determine that probation may not be in the best interest of the public).

Accordingly, we vacate the revocation of probation and remand for the Lawrence Circuit Court to make individualized findings as to whether

Marcum's violations of the conditions of his probation mean that he is a danger to the community *and* cannot be appropriately managed in the community pursuant to KRS 439.3106(1) or whether alternative sanctions could be appropriate under KRS 439.3106(2).

ALL CONCUR.

BRIEFS FOR APPELLANT:

Erin Hoffman Yang
Assistant Public Advocate
Department of Public Advocacy
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Kenneth Wayne Riggs
Assistant Attorney General
Frankfort, Kentucky